The STATE of Utah, Plaintiff and Respondent,

v.

Ronald L. SMITH, Defendant and Appellant.

No. 14859.

Supreme Court of Utah.

Oct. 17, 1977.

---

1. *Green v. U. S.*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199.

David Paul White, Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., William W. Barrett, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

Defendant was convicted by a jury of issuing a bad check and theft by deception, under Sections 76–6–505 and 76–6–405, respectively, Utah Code Annotated, 1953, as amended, and sentenced by the District Court for Salt Lake County, to the indeterminate term of one to fifteen years. On appeal, defendant seeks reversal of his conviction on both counts and contends that: (1) Warning the payee that there are insufficient funds to cover the check raises a defense of voluntary termination and the trial court committed error in refusing to instruct the jury thereon; (2) The prosecutor's examination of defendant on the question of prior felony convictions was reversible error; and (3) That an instruction was misleading, causing prejudice to defendant's case. Affirmed. No costs awarded.

Defendant was in the business of promoting sporting events, and these activities brought him in contact with James Eakins, a professional athlete. Beginning in June, 1975, Mr. Eakins had several discussions with defendant concerning the sale of the Eakins' home. On or about October 20, 1975, defendant called Mr. Eakins to inform him that he had obtained a loan that would enable him to purchase the home. Later that week, Mr. and Mrs. Eakins met with defendant to prepare and sign the deed. However, defendant stated that he did not have any money with him, and the delivery of the deed did not take place. A meeting was arranged for the following day, October 23, 1975. Defendant arrived but claimed to have forgotten the check. De-fendant then suggested that Mr. Eakins give him the deed, and he and Mrs. Eakins could return to his office and pick up the check. The deed was delivered to defendant, but the check was not given to Mrs. Eakins because defendant maintained that a second signature was necessary. Defendant obtained this signature and delivered a check to Mrs. Eakins on October 24, 1975, in the amount of $32,453.51. Mrs. Eakins testified that defendant told her not to cash the check immediately because the necessary funds were in another account, but that they would be transferred by one o'clock that same day. Defendant maintains that he did not say that the funds would be transferred by one o'clock, but that he said he would call by one o'clock to let her know if they had been transferred. Nevertheless, the funds that were supposed to have been transferred were apparently nonexistent. The account on which the check was drawn was closed on October 23, 1975, one day before the check in question was written, although it was not shown that defendant was aware of this. On that day the account was closed by the bank, as it was overdrawn by 539.70. The highest balance in the entire record of the account was $1044.40. The check was not honored. On this same October 23, and prior to the issuing of this check, defendant had transferred title to the property to a Mr. Crowley in satisfaction of a previous debt, and Mr. Crowley had mortgaged the property.

As to the offense of issuing a bad check, defendant asserts that the trial court erred in refusing to instruct the jury that it is a defense if the maker informs the payee that there are insufficient funds to cover the check. Defendant asserts that the evidence supports such an instruction and cites, as the applicable statute, Section 76–2–307, Utah Code Annotated, 1953, as amended:

It is an affirmative defense to a prosecution in which an actor's criminal responsibility arises from his own conduct . . . that prior to the commission of the offense, the actor voluntarily terminated his effort to promote or facilitate its commission *and either:*

(1) Gave timely warning to the proper law enforcement authorities or the intended victim; *or*

(2) Wholly deprives his prior efforts of effectiveness in the commission. [Emphasis added.]

The question before this court is whether the evidence presented before the District Court was sufficient to raise the voluntary termination defense.

For defendant's actions to be considered as a voluntary termination under the statute, he must show (1) that he voluntarily terminated his efforts prior to the commission of the offense; *and* (2) gave timely warning; *or* (3) wholly deprived his prior efforts of effectiveness.

The evidence does not show that defendant ever terminated his efforts *prior* to the commission of the offense. Defendant had already issued the check and had already taken possession of the deed and transferred the property, before any of his alleged acts of termination took place.

Defendant did tell Mrs. Eakins not to cash the check immediately, but whatever value this may have had as a timely warning was greatly diminished by his subsequent statement that adequate funds were available and would be transferred in a few hours. This "warning," taken in its entire context, did more to facilitate the commission of the crime than it did to terminate it.

And defendant certainly did not wholly deprive his prior efforts of effectiveness. On the contrary, defendant had taken delivery of the deed to the Eakins' home and transferred it to Mr. Crowley, depriving the true owners of their property, while the Eakins were left holding a worthless check.

In *State v. Johnson*, 112 Utah 130, 185 P.2d 738, (1947) a criminal case involving homicide, this court faced a similar claim, regarding a refused instruction, and set forth the standard for determining when an instruction must be given:

It is admitted that *the defendant is entitled to have the jury instructed on his theory of the case if there is any substantial evidence to justify giving such an instruction.* However, when the legislature permits a defendant to avoid the consequences of his act because the killing was excusable, *an instruction is not necessary unless the facts and circumstances* impelling the accused to act *are in some way consistent with the legislative intent* to excuse. Under the evidence, the elements necessary to bring the accused within the provisions of the excusable homicide are missing. The trial court did not err in refusing to give an instruction under the excusable homicide provisions . . . 112 Utah at 141, 185 P.2d at 743–44. [Emphasis added.]

This Court does not find any substantial evidence presented before the District Court that would require instructions on a voluntary termination defense to be submitted to the jury, and therefore that Court did not commit error by refusing to instruct thereon.

■ Defendant's second contention, concerning the offenses of issuing a bad check and theft by deception, is that the prosecutor's examination of the defendant on the question of prior felony convictions was reversible error. The prosecutor asked the defendant, who took the stand, if he had ever been convicted of felony; a proper question under Section 78–24–9 Utah Code Annotated, 1953. Defendant responded in the negative, after which counsel approached the bench and there had a discussion in front on the jury, but out of their hearing. No further questions as to defendant's prior record were permitted. The defendant argues that this discussion gave the jury the impression that defendant in fact had a prior felony conviction, and was prejudicial. We see no merit to this argument. Furthermore, no objection was made by defendant's counsel, nor was a request for a cautionary instruction made. As the issue was not preserved for appeal, defendant must be deemed to have waived error, if any there was, in this regard.

■ Defendant's third point, as to both offenses, is that the trial court's instruction no. 12 was misleading. Defendant asserts that this instruction has the effect of pre-

suming criminal intent from the act, and that the statutes on which the charges are based do not support such a presumption. The court instructed the jury:

In the crimes charged in Count one and Count two of the information, there must exist a union or joint operation of act or conduct and criminal intent. To constitute criminal intent it is not necessary that there should exist an intent to violate the law. Where a person intentionally does that which the law declares to be a crime, he is acting with criminal intent, even though he may not know that his act or conduct is unlawful.

The trial court's instruction is a statement of "ignorance of the law is no defense," and is an accurate statement of the law applicable to the criminal charges in the instant case. Defendant's claim can only be taken to be a circuitous way of saying that there was insufficient evidence of the required culpable mental state.

Other instructions referring to mental state set forth in relevant part, that to find defendant guilty of issuing a bad check it must be found "from the evidence and beyond a reasonable doubt" that defendant (1) *intentionally* issued a check for the *purpose* of obtaining the property; and (2) *knew* that said check would not be paid by drawee. As the offense of theft by deception, the court instructed the jury that to find defendant guilty they must find (1) the property value exceeding $2,500 was *intentionally* and *knowingly* obtained; and (2) that it was *obtained by deception* and with a *purpose to deprive* the Eakins of their property. The jury was correctly instructed with regard to culpable mental state.

ELLETT, C. J., and CROCKETT, MAUGHAN and HALL, JJ., concur.